United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEAH IP LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>PLAXO, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-08-4872 PJH (EMC)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER; DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER; AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF**<br><br>**(Docket Nos. 81, 85, 101)** |

Currently pending before the Court are the parties' cross-motions for a protective order. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **GRANTS** Defendants' motion and **DENIES** Plaintiff's. The Court also **DENIES** Plaintiff's related motion for leave to file a supplemental brief to address alleged mischaracterizations because the alleged mischaracterizations are immaterial.

## I. DISCUSSION

The current discovery disputes arose when the parties could not reach agreement on all the terms of a contemplated protective order, intended to protect each party's confidential information. There are two main disputes: (1) whether Plaintiff's litigation attorneys who view Defendants' confidential technical information should be subject to a patent prosecution bar for a limited period of time and (2) whether David Marcus, an in-house counsel for one of the defendants, should be given access to Plaintiff's confidential information designated "attorney's eyes only" ("AEO"). Each issue is addressed briefly below.

A.    <u>Patent Prosecution Bar</u>

Defendants argue that any litigation attorney representing Plaintiff should be permitted to access Defendants' confidential technical information only if he or she is barred, for a certain period of time, from prosecuting for Plaintiff any patent application relating to the subject matter of the patents-in-suit. Plaintiff argues that the bar is not justified. Alternatively, Plaintiff argues that a similar bar should be placed on Defendants' litigation attorneys.

The cases cited by both parties indicate that resolution of this issue turns on (1) whether Plaintiff's litigation attorneys are engaged in competitive decisionmaking and, if so, (2) the risk to Defendants if there were no bar (*e.g.*, from inadvertent disclosures) compared to the risk or prejudice to Plaintiff if a bar were imposed. *Cf. Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (stating that, when a court determines whether one party's in-house counsel should be permitted to view the opposing party's highly confidential information, it should balance the risk to the opposing party of inadvertent disclosure of its trade secrets to competitors against the risk to the other party that protection of the information impaired prosecution of its claims; noting that a crucial inquiry was whether in-house counsel was involved in competitive decisionmaking).

As to the first matter, the Court concludes that litigation counsel are engaged in competitive decisionmaking. The fact that Plaintiff and Defendants are not direct competitors is not dispositive. In *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, No. 08-00863 MHP, 2008 U.S. Dist. LEXIS 108202 (N.D. Cal. Oct. 22, 2008), a patent infringement case, Judge Patel specifically acknowledged that the parties were not direct competitors – the plaintiff held intellectual property in the area of speech recognition while the defendant was a bank – but stated that this did not mean that the defendant-bank was not in need of protection. There was no dispute that

> [the defendant-bank] uses speech recognition systems. It is for this very reason that [the defendant-bank] has been brought to the table in this litigation. Thus, the very fact that [the defendant-bank] is being sued by [the plaintiff] for infringement of the patents-in-suit indicates that [the plaintiff] believes that the parties have at least some overlapping interest in the same industry. This belief, be it meritorious or not, is one that could certainly affect the competitive nature of [the defendant-bank's business] . . . . At a minimum, the court finds that [the defendant-bank's] concern that [the plaintiff's prosecution counsel] could use the knowledge gained in this litigation

United States District Court

For the Northern District of California

>   to prosecute future related patents to [the defendant-bank's]
>   disadvantage is valid and deserving of protection.

*Id.* at \*27-28.

The Court rejects Plaintiff's argument that its litigation attorneys are not engaged in competitive decisionmaking because they are purely outside litigation attorneys and nothing more, thus making the situation here comparable to that in *Nazomi Communications, Inc. v. Arm Holdings PLC*, No. C 02-02521-JF, 2002 U.S. Dist. LEXIS 21400 (N.D. Cal. Oct. 11, 2002). Based on the papers submitted, it is not clear that Plaintiff's litigation counsel has only that limited role. Indeed, the opposite seems true. Plaintiff's papers indicate that it would like to have litigation counsel play a role in patent prosecution -- *i.e.*, to provide assistance to its patent prosecution counsel who is currently prosecuting multiple pending patent applications, all related to the patents-in-suit.[1] *See Cummins-Allison Corp. v. Glory Ltd.*, No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653, at \*25 (N.D. Ill. Jan. 2, 2004) (emphasizing the fact that plaintiff's counsel was currently prosecuting patents on the exact same subject matter of the litigation); *see also Mikohn Gaming Corp. v. Acres Gamins, Inc.*, No. CV-S-97-1383-HDM(LRL), 1998 U.S. Dist. LEXIS 22251, at \*11 (D. Nev. Apr. 15, 1998) (noting that law firm "is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit"); *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714, at \*14 (D. Del. Dec. 19, 1994) (noting that law firm "is currently prosecuting applications relating to the very patents at issue in this litigation"); *cf. Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC*, No. 98 C 7408, 1999 U.S. Dist. LEXIS 12437, at \*9 (N.D. Ill. Aug. 9, 1999) (focusing on "whether the firm's prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process"). If that were not the case, the Court is at a loss why Plaintiff has mounted such a vigorous opposition to Defendants' proposed bar.

---

[1] Notably, the cases on which Plaintiff primarily relies, *i.e.*, *Cellectis SA v. Precision BioSciences, Inc.*, No. 5-08-cv-00119 (E.D.N.C. Mar. 2, 2009) (attached as Exhibit C to Schroer moving declaration), and *Avocent Redmond Corp. v. Rose Elecs., Inc.*, 242 F.R.D. 574, 579 (W.D. Wash. 2007), are distinguishable precisely because there is no indication that, in those cases, the patentholder was contemporaneously prosecuting patent applications related to the patents-in-suit.

1    As to the second matter, the risk to Defendants if there were no bar is significant.  Without a
2 patent prosecution bar, Plaintiff's litigation attorneys could inadvertently disclose to patent
3 prosecution counsel Defendants' confidential technical information which could inform the
4 fashioning of the seven continuation patents being prosecuted by Plaintiff thereby providing Plaintiff
5 with a strategic advantage..  "[T]his is not a criticism of the ethics of any particular attorneys . . . .
6 Rather, it is a recognition of the limits of human beings to completely compartmentalize the multiple
7 sources from which they obtain information."  *Id.* at *23.  For that reason, and contrary to what
8 Plaintiff contends, a term in the protective order specifying that confidential information may be
9 used only for purposes of this litigation is not sufficient.

10    In contrast, the risk to Plaintiff if there were a bar appears minimal.  Plaintiff's litigation
11 attorneys claim that they currently represent Plaintiff in this lawsuit only and that they are not
12 engaged in patent prosecution for Plaintiff in any jurisdiction.  Even if they were to be employed to
13 prosecute patents in the future, the bar is narrow; it does not apply to the entire firm.  It applies only
14 to those attorneys who see the confidential technical information.  Plaintiff asserts that, if there were
15 a patent prosecution bar, then its litigation counsel could not even tell its patent prosecution attorney
16 about, *e.g.*, prior art that was uncovered in this litigation -- even though Plaintiff is required to
17 disclose to the PTO the existence of litigation and material information arising therefrom.  This
18 argument is not persuasive.  Any prior art identified in the litigation would be information to which
19 Plaintiff, *i.e.*, the client, would be privy.  Plaintiff could communicate this information to its patent
20 prosecution counsel.  There would be no need to involve any trial counsel subject to the bar.

21    Accordingly, the Court concludes that a patent prosecution bar as requested by Defendants is
22 appropriate.  The Court orders the parties to meet and confer as to the precise language to be used in
23 the protective order on this matter.  To assist the parties, however, the Court notes as follows:

24    (1)    To the extent Plaintiff believes that the protective order should "[s]pecifically
25 define[] the types of materials to which any prosecution bar should be limited," Pl.'s Mot. at 2, the
26 Court is not inclined to agree.  *See Cummins-Allison*, 2003 U.S. Dist. LEXIS 23653, at *31-32
27 (noting that a bar against prosecution "relating to the subject matter of the patents-in-suit" is
28 language routinely employed by courts when imposing a patent prosecution bar).  On the other hand,

4

1 the bar should be limited to technical, not financial, information, since the latter will not inform the
2 patent prosecution.

3     (2)    To the extent Plaintiff believes that the bar should expire immediately upon the trial
4 court in this case issuing a final judgment (*i.e.*, not to extend through an appeal and/or one year
5 beyond), again, the Court is not inclined to agree. At the very least, the bar should last through any
6 appeals. Most courts seem to agree that a one-year bar past the end of all appeals is reasonable.

7     (3)    Plaintiff's contention that Defendants' litigation counsel should likewise be barred
8 from prosecuting patents for Defendants lacks merit because Plaintiff has not articulated anything
9 more than a generalized non-specific fear about the risk of disclosure of its own confidential
10 technical information by Defendants' litigation attorneys.

11 B.    <u>Access of In-House Counsel to Highly Confidential Information</u>

12 Plaintiff's papers do not reflect a substantive opposition to Mr. Marcus having access to
13 Plaintiff's highly confidential information. Rather, Plaintiff's main complaint is that, "even though
14 [Defendants] do not consider [Plaintiff] to be a competitor," as evidenced by the Marcus declaration,
15 Mr. Marcus is substantially involved in the prosecution of patents. However, Plaintiff has failed to
16 establish that Mr. Marcus is engaged in competitive decisionmaking with respect to Plaintiff.
17 Plaintiff is engaged in a singularly narrow business. It does not offer any products or services but
18 rather is in the business of licensing and enforcing its patents. Plaintiff has not established or
19 explained how its business will be affected if Mr. Marcus were to have access to its highly
20 confidential information. Nor is there any indication that Mr. Marcus is currently involved or likely
21 to be involved in any patent prosecution by Defendants which are related to the patents-in-suit or
22 which would otherwise affect Plaintiff's business. Plaintiff's argument is premised on a symmetry
23 that does not exist.

24 ///
25 ///
26 ///
27 ///
28 ///

5

## II. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for a protective order and denies Plaintiff's cross-motion. The parties are ordered to meet and confer to determine whether they can reach agreement on the specific language to use in the protective order, consistent with the ruling of the Court in this order.

This order disposes of Docket Nos. 81, 85, and 101.

IT IS SO ORDERED.

Dated: May 4, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge